**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JAYSON RODRIGUEZ,**

**Plaintiff,**

**V.** **CASE NO:**

**ELITE INSURANCE PARTNERS, LLC,**

**Defendant.**
_______________________________________/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JAYSON RODRIGUEZ, (hereinafter "Plaintiff" or "Mr. Rodriguez"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, ELITE INSURANCE PARTNERS, LLC (hereinafter "Defendant," or "Elite Insurance Partners") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on sex and for associational disability discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; the Americans with Disabilities Act

of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his sex and because of sex-based stereotypes about his role as a male caregiver, and because of his association with his disabled son and his caregiving responsibilities, culminating in his demotion and the termination of his employment, in violation of his rights under Title VII, the ADA, and the FCRA.

3. As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer the loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## PARTIES

8. Plaintiff is a male and the father and caregiver of a son who has a disability.

9. Plaintiff is a member of a class protected against discrimination based on his sex under Title VII and the FCRA, and is protected against associational disability discrimination under the ADA and the FCRA.

10. During the period from January 7, 2021, until June 10, 2026, Defendant employed Plaintiff, most recently as a Life Insurance Sales Supervisor.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII, the ADA, and the FCRA.

13. The Defendant, ELITE INSURANCE PARTNERS, LLC, is a Delaware limited liability company with a principal place of business located at 8745 Henderson Road, Suite 220, Tampa, Florida 33634, from which it employed Plaintiff.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed more than one hundred (100) employees.

15. At all times material herein, Defendant met, and continues to

meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the ADA, and the FCRA.

16. Accordingly, Defendant is liable under Title VII, the ADA, and the FCRA for the unlawful discrimination to which it subjected Plaintiff as more fully alleged herein.

**ADMINISTRATIVE PREREQUISITES**

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On July 16, 2026, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, discrimination based on sex and associational disability discrimination (EEOC Charge No. 511-2026-04312).

19. On July 30, 2026, Plaintiff filed an amended Charge of Discrimination with the EEOC under the same charge number.

20. On August 11, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2026-04312) against Defendant.

21. This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

22. Because Plaintiff's Charge of Discrimination was dual filed with the FCHR, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See § 760.11, Florida Statutes.

23. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

24. On January 7, 2021, Defendant hired Plaintiff as a Sales Supervisor.

25. Based on his performance, Defendant later promoted Plaintiff to Sales Manager, a role in which he served as a Medicare Floor Manager supervising a team of sales agents.

26. Throughout his employment, which spanned approximately five and one-half years, Plaintiff was a consistent top performer. Plaintiff was the number one supervisor in production in the company, and he received no corrective actions, no write-ups, and no documented discipline prior to his termination.

27. In recognition of his performance, Plaintiff qualified for three of the five President's Cabinet trips reserved for top producers, and he was recognized by Director of Sales Jason Smith on his five-year anniversary for consistently hitting and exceeding his sales numbers and helping to develop other supervisors.

28. Plaintiff is the father and primary caregiver of a son who has a disability that substantially limits one or more of his major life activities. At all times material herein, Defendant was aware of Plaintiff's son's disability and of Plaintiff's caregiving responsibilities.

29. Plaintiff's son is highly fixated on routines, and when his routine is disrupted he can become highly distressed, including engaging in self-injurious behavior. Plaintiff's involvement was necessary to help calm his son and prevent self-injurious behavior, and Plaintiff's caregiving responsibilities included attending to his son during the night.

30. Throughout Plaintiff's employment, Defendant's management questioned and disparaged Plaintiff's caregiving responsibilities in a manner reflecting sex-based stereotypes about his role as a male caregiver. When Plaintiff requested to leave work or sought time off because of his son's needs, members of management responded with comments such as

"Can't she handle it?" and questioned why Plaintiff's wife did not work if his son attended school during the day.

31. When Plaintiff explained to Director of Sales Jason Smith that he had difficulty arriving on time for early morning meetings because he had been up during the night helping his autistic son, Mr. Smith responded, "Can't your wife sleep with him?"

32. In November 2025, Defendant demoted Plaintiff from Medicare Floor Manager to a Life Insurance Sales Supervisor position. Defendant told Plaintiff that the demotion was because it did not have room in the budget to continue paying his salary.

33. As a result of the demotion, Plaintiff's bonus entitlement was reduced, and the demotion affected insurance coverage for one of Plaintiff's dependents.

34. Shortly after demoting Plaintiff, Defendant promoted another supervisor into a senior supervisor role that functioned as a manager-level position, undercutting Defendant's stated reason that it could not afford a manager-level salary.

35. After the demotion, Plaintiff learned that a supervisor had made a comment tying Defendant's decision-making about Plaintiff's

employment to his autistic son and his caregiving responsibilities. Plaintiff reported this comment to Director of Sales Jason Smith, who stated that he would investigate. To Plaintiff's knowledge, Defendant took no corrective action.

36. Around the time of the demotion, Defendant also required Plaintiff to work outside of his scheduled hours of 9:00 a.m. to 6:00 p.m., including by requiring his attendance at mandatory 8:00 a.m. meetings before his shift.

37. In early March 2026, while Plaintiff was away attending an event, his son experienced a crisis related to his disability. Plaintiff's son repeatedly asked for Plaintiff and did not understand that Plaintiff would be away, and the situation escalated to self-harming behavior and an inability to sleep for twenty-four hours.

38. Plaintiff purchased a return flight the next day, informed Director of Sales Jason Smith of what had happened, provided proof of his return flight, and apologized for being unable to attend a company trip to Vail, Colorado, for which he had qualified. Thereafter, and without Plaintiff's consent or acknowledgment, Defendant deducted $1,136.05 from Plaintiff's April 24, 2026 paycheck.

39. Beginning on or about April 4, 2026, Defendant implemented Sunday evening training sessions of approximately two hours in duration, which Defendant described as "optional but strongly suggested."

40. Plaintiff was unable to attend the Sunday sessions because of his caregiving responsibilities for his disabled son. To Plaintiff's knowledge, no other supervisor had a child with a disability, and Plaintiff was the only supervisor who could not attend the Sunday sessions because of caregiving responsibilities.

41. Each Monday following the Sunday sessions, members of Defendant's management thanked those who had attended and made comments including "Jagger sees who is attending and who is not," "Those who frontload the work will be rewarded," "EIP will take care of the people who take care of EIP," and "Sacrifices have to be made if we want to get paid more," conveying that career advancement depended on attending the sessions and working additional hours that conflicted with Plaintiff's caregiving responsibilities.

42. On June 10, 2026, Defendant terminated Plaintiff's employment, effective immediately, in a meeting attended by Chief Operating Officer Philip Dalimonte and Director of Sales Jason Smith.

43. Defendant told Plaintiff that he was terminated because he was not a "culture fit."

44. Defendant's stated reason for Plaintiff's termination was pretextual. Plaintiff was the number one supervisor in production, had no corrective actions or write-ups, had recently been recognized on his five-year anniversary, had been invited on the President's Cabinet trip, and had been offered the possibility of a brokerage partnership by Defendant's chief executive officer.

45. Following Plaintiff's termination, Defendant refused to pay Plaintiff his final bonus of approximately $5,000, which Plaintiff had earned, claiming that Plaintiff had left on bad terms. Plaintiff disputes that characterization.

46. The true motivating factors for Defendant's demotion and termination of Plaintiff, and its alteration of the terms and conditions of his employment, were unlawful sex-based stereotypes about Plaintiff's role as a male caregiver and Plaintiff's association with his disabled son and his caregiving responsibilities.

47. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages, lost benefits,

lost earning capacity, emotional distress, mental anguish, humiliation, and harm to his professional reputation.

**<u>COUNT I</u>**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**
**Sex Discrimination**

48. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

49. Plaintiff is a male and, therefore, a member of a protected class under Title VII.

50. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

51. At all times material, Plaintiff was qualified for his position and performed the essential functions of his job.

52. During Plaintiff's employment, Defendant subjected Plaintiff to discrimination because of his sex, including sex-based stereotypes about his role as a male caregiver.

53. Such sex-based conduct included, among other things, questioning why Plaintiff's wife did not work, responding to Plaintiff's caregiving needs with comments such as "Can't she handle it?" and "Can't your wife sleep with him?", and penalizing Plaintiff in the terms and

conditions of his employment because he did not conform to stereotypes about the role of a male employee with respect to family caregiving.

54. The foregoing conduct was unwelcome and was directed at Plaintiff because of his sex.

55. Defendant, through its supervisors and managers, knew or should have known of the sex discrimination and failed to take prompt and effective remedial action.

56. Defendant demoted Plaintiff and, on June 10, 2026, terminated Plaintiff's employment.

57. Plaintiff's sex was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment, to demote him, and to terminate his employment.

58. Defendant's stated reasons for its actions were false, pretextual, insufficient, and/or not the real reasons for its actions.

59. As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment

interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Associational Disability Discrimination**

60. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

61. The ADA, 42 U.S.C. § 12101 et seq., prohibits an employer from discriminating against a qualified individual in the terms, conditions, and privileges of employment because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

62. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the ADA.

63. At all times material, Plaintiff was qualified for his position and performed the essential functions of his job.

64. Plaintiff's son has a disability that substantially limits one or more of his major life activities, and Plaintiff has a relationship and association with his disabled son as his father and caregiver.

65. At all times material, Defendant was aware of Plaintiff's son's

disability and of Plaintiff's relationship and association with his disabled son.

66. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment because of his association with his disabled son and his caregiving responsibilities, including by demoting Plaintiff, altering the terms and conditions of his employment, and terminating his employment.

67. Plaintiff's association with his disabled son was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment, to demote him, and to terminate his employment.

68. Defendant, through its supervisors and managers, knew or should have known of the associational disability discrimination and failed to take prompt and effective remedial action.

69. Defendant's stated reasons for its actions were false, pretextual, insufficient, and/or not the real reasons for its actions.

70. As a direct and proximate result of Defendant's unlawful associational disability discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other

compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**Sex Discrimination**

71. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

72. Plaintiff is a male and, therefore, a member of a protected class under the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

73. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the FCRA.

74. At all times material, Plaintiff was qualified for his position and performed the essential functions of his job.

75. During Plaintiff's employment, Defendant subjected Plaintiff to discrimination because of his sex, including sex-based stereotypes about his role as a male caregiver.

76. Such sex-based conduct included, among other things,

questioning why Plaintiff's wife did not work, responding to Plaintiff's caregiving needs with comments such as "Can't she handle it?" and "Can't your wife sleep with him?", and penalizing Plaintiff in the terms and conditions of his employment because he did not conform to stereotypes about the role of a male employee with respect to family caregiving.

77. The foregoing conduct was unwelcome and was directed at Plaintiff because of his sex.

78. Defendant, through its supervisors and managers, knew or should have known of the sex discrimination and failed to take prompt and effective remedial action.

79. Defendant demoted Plaintiff and, on June 10, 2026, terminated Plaintiff's employment.

80. Plaintiff's sex was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment, to demote him, and to terminate his employment.

81. Defendant's stated reasons for its actions were false, pretextual, insufficient, and/or not the real reasons for its actions.

82. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative

charge and the receipt of all required notices.

83. As a direct and proximate result of Defendant's unlawful sex discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Associational Disability Discrimination

84. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

85. The Florida Civil Rights Act prohibits discrimination in employment on the basis of disability, including discrimination against an individual because of the individual's association with a person who has a disability. Fla. Stat. § 760.10.

86. At all times material, Defendant employed Plaintiff and was an "employer" within the meaning of the FCRA.

87. At all times material, Plaintiff was qualified for his position and

performed the essential functions of his job.

88. Plaintiff's son has a disability that substantially limits one or more of his major life activities, and Plaintiff has a relationship and association with his disabled son as his father and caregiver.

89. At all times material, Defendant was aware of Plaintiff's son's disability and of Plaintiff's relationship and association with his disabled son.

90. Defendant discriminated against Plaintiff in the terms, conditions, and privileges of his employment because of his association with his disabled son and his caregiving responsibilities, including by demoting Plaintiff, altering the terms and conditions of his employment, and terminating his employment.

91. Plaintiff's association with his disabled son was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment, to demote him, and to terminate his employment.

92. Defendant, through its supervisors and managers, knew or should have known of the associational disability discrimination and failed to take prompt and effective remedial action.

93. Defendant's stated reasons for its actions were false, pretextual, insufficient, and/or not the real reasons for its actions.

94. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

95. As a direct and proximate result of Defendant's unlawful associational disability discrimination, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 9th day of November 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033

Carol Bello
Florida Bar No. 1045715
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Carol@ImlerLaw.com
Leovany@ImlerLaw.com
Attorneys for Plaintiff